**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CARLOS J., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 19 C 2453 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Carlos J. brings this action seeking judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). An administrative law judge determined that Carlos was not disabled because he was capable of performing a range of sedentary work. For the reasons explained below, the ALJ's denial of Carlos's application for DIB is reversed and remanded for further administrative proceedings.

## BACKGROUND

Carlos was born in 1970 and had one kidney removed as a child. He completed high school and has previous work experience as a supervisor and line worker in a cylinder factory. Carlos worked for the same employer for 20 years. Carlos filed an application for disability insurance benefits on January 19, 2016, alleging that he became disabled on January 27, 2015 because of Achilles tendon surgery on his left ankle and pain in his left foot and leg. The record shows that Carlos underwent two left Achilles repair surgeries. On February 18, 2015, Carlos underwent a retrocalcaneal exostectomy with detachment and reattachment of left Achilles tendon with two screws. On April 15, 2016, after failing conservative treatment, including physical therapy and two platelet-rich plasma ("PRP") injections to the left lower extremity for persistent pain, Carlos

underwent a second Achilles surgery: left calcaneal exostectomy with debridement of Achilles tendon.

On February 28, 2018, ALJ Melissa M. Santiago issued a decision denying Carlos's DIB claim. (R. 43-52). Following the five-step sequential analysis, the ALJ found that Carlos had not engaged in substantial gainful activity since his alleged onset date of January 27, 2015 (step 1). *Id.* at 45. She identified Achilles tendinitis, chronic kidney disease (stage 3), depression, anxiety, and hypertension as severe impairments (step 2). *Id.* The ALJ determined that Carlos's impairments did not meet or equal the severity of a list impairment (step 3). *Id.* at 45-47. The ALJ found that Carlos retained the RFC to perform sedentary work except that he could: occasionally crouch, stoop, and climb ramps and stairs; never crawl, kneel, or climb ladders, ropers, or scaffolds; cannot work on uneven terrain; and is limited to performing simple and routine instructions and tasks. *Id.* at 47-50. At step 4, the ALJ concluded that Carlos was unable to perform any past relevant work. *Id.* at 50. Given the RFC, the ALJ determined that Carlos could perform other jobs identified by the VE including assembler, sorter, and packer. *Id.* at 51. Based on this step 5 finding, the ALJ found that Carlos was not disabled. *Id.* at 52. The Appeals Council denied Carlos's request for review on February 14, 2019, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## **DISCUSSION**

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a sequential five-step inquiry, asking: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment?

2

(3) Does the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162 n.2.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Villano*, 556 F.3d at 562; *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing an ALJ's decision, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusions. *See Steele v. Barnhart*, 290 F.3d 936, 938, 941 (7th Cir. 2002) (internal citation and quotations omitted); *see also Fisher v. Berryhill*, 760 F. App'x 471, 476 (7th Cir. 2019) (explaining that the "substantial evidence" standard requires the building of "a logical and accurate bridge between the evidence and conclusion"). Moreover, when the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Carlos raises four main arguments in support of reversal: (1) the ALJ erred at step two in failing to find severe impairments of Achilles tendon rupture and calcaneal exostosis; (2) the ALJ erred in failing to consider at step three whether his combined impairments medically equaled Listing 1.08; (3) the ALJ failed to properly evaluate his subjective symptom allegations; and (4) the ALJ's RFC assessment is not supported by substantial evidence. The Court agrees that the ALJ's decision contains several errors in evaluating his subjective symptom allegations. Because some of Carlos's arguments regarding the subjective symptom analysis and physical RFC determination are related and overlap, the Court addresses them together. Since remand is required, the Court need not address Carlos's remaining arguments in support of reversal or remand.

At the hearing, Carlos testified that the condition of his left foot has not improved since his second Achilles surgery in April 2016. (R. 81). Carlos stated that is unable to perform a sedentary job where he would have to sit down all day because he often needs to elevate his left foot. *Id*. at 75. He experiences swelling and pain in his left foot and elevates his left leg throughout the day. *Id.* 75-76. Carlos stated that weight and pressure make the pain and swelling worse. *Id*. at 83, 86. Carlos explained that wearing regular shoes aggravates his pain because of the contact with the back of his left foot. *Id*. at 83-84. Additionally, Carlos testified that he cannot take pain medications because he has one kidney. *Id*. at 75. Carlos testified that he can stand 10-15 minutes before experiencing pain, sit for 10 to 15 minutes before needing to walk around, and sit for 25 minutes at a time with his left leg elevated. *Id*. at 82-83.

In evaluating a claimant's subjective symptom statements, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons."

4

*Villano*, 556 F.3d at 562 (7th Cir. 2009); *see* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). An ALJ may not discredit a claimant's testimony about his "pain and limitations solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562. Although the Court will defer to an ALJ's subjective symptom finding that is not patently wrong, the "ALJ still must competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015). Without an adequate subjective symptom evaluation by the ALJ, "neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

After recognizing that Carlos's determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ concluded that Carlos's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 49-50). The ALJ discounted Carlos's subjective symptom allegations because the "overall record does not support the alleged severity of the claimant's symptoms and associated limitations." *Id*. at 50. Specifically, the ALJ found that Carlos's allegations were not supported because (1) "treatment records document physical improvement with a combination of medication, surgery, and physical therapy"; (2) "[t]he record does not evidence that the claimant needed to elevate his legs after mid-2015"; (3) "the claimant did not present to a pain clinic (per his provider's recommendation)"; (4) Carlos "reported climbing fifteen stairs where he lives"; and (5) "the claimant did not present with a cane or assistive device at the hearing." *Id*.

The ALJ's explanations for discrediting Carlos's subjective complaints are inadequate or unsupported. First, the ALJ found that "treatment records document physical improvement with

5

a combination of medication, surgery, and physical therapy." (R. 50). According to the ALJ, the RFC was also supported by evidence of physical improvement with treatment. *Id.* The ALJ reasoned: "although postoperative examinations reveal that claimant regularly reports some pain in his left foot, the longitudinal record suggests that the claimant's pain improved over time with a combination of medication and physical therapy." *Id.* at 49. The relevant inquiry is whether an individual has improved enough to be capable of sustaining full-time work. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). In making this determination, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce …. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits.").

Carlos contends that the ALJ improperly cherry-picked the treatment records to focus on temporary improvements in his condition and to exaggerate the degree to which he obtained relief from his second surgery, physical therapy, and medications. The Court agrees. The record as whole demonstrates that Carlos continued to struggle with significant and increasing pain despite two surgeries, several rounds of physical therapy, and multiple medication trials. For instance, the ALJ cited Dr. Ameha Joba's treatment note on January 20, 2016 as evidence that Carlos's "pain improved over time." (R. 49, 463). At that time, treating podiatrist Dr. Joba noted that Carlos was attending physical therapy and reported that his pain level was regularly 3/10. *Id.* at 463. The ALJ failed to mention, however, that on April 5, 2016, after completing that course of physical therapy, Carlos had "not noticed any improvement in pain." *Id.* at 458. Carlos reported to Dr. Joba that his

6

pain level was currently 5/10 when sitting but could get up to 7-8/10 while walking. *Id*. Given the x-ray findings, clinical symptoms, and "failed conservative treatment including PT [and] PRP injections," Dr. Joba recommended that Carlos undergo a left calcaneal exostectomy with hardware removal. *Id*. at 459. Carlos underwent a second Achilles surgery ten days later on April 15, 2016. *Id*. at 35-36.

The treatment record does show some limited improvement on a temporary basis in Carlos's pain symptoms following his second surgery in April 2016 and several courses of physical therapy thereafter. But the ALJ cherry-picked evidence from the record to support her finding that Carlos had sustained pain improvement over the period at issue, while ignoring ongoing reports of significant pain. A full review of the record indicates that Carlos did not achieve meaningful pain reduction and in fact, his pain symptoms worsened over time. The ALJ focused on postoperative reports by Carlos in June 2016 that his "pain was significantly better after surgery" and in July 2016 that he was "ambulating in open sandals with no complaints" and "displayed only mild pain in the left foot to palpation." (R. 49, 450, 451). Yet, the ALJ failed to note that two months later at his next appointment in September 2016, Carlos complained to his podiatrist Dr. Michael Maghrabi that he "continues to feel pain to posterior left heel, especially during ambulation," "is unable to tolerate regular shoe gear with closed back," and "notices some swelling to the area." *Id*. at 572. Carlos reported completing a course of physical therapy since his last visit with "some pain improvement," and Dr. Maghrabi sent him for a second course of physical therapy. *Id*. at 572-73. Similarly, in November 2016, Carlos stated that he "continues to feel pain to posterior left heel, especially during ambulation and when walking fast" and "[h]e remains unable to wear closed back shoes due to pain." *Id*. at 570. Because Carlos had noticed "some improvement with physical therapy," Dr. Maghrabi sent him for another round of physical therapy. *Id*. at 571.

7

Carlos completed three rounds of physical therapy on December 29, 2016 but reported in January 2017 that his pain level had increased to 5/10. (R. 566, 568). In January 2017, Carlos continued to feel pain to his posterior left heel, especially during ambulation, continued to notice swelling to the back of left heel, and felt soreness and tightness to the area. *Id*. On January 9, 2017, Dr. Maghrabi wrote that Carlos was "frustrated that there hasn't been much improvement with the pain," which the ALJ failed to note. *Id*. at 568. Dr. Maghrabi discussed with Carlos the possibility of a third "surgical intervention to [the] left heel to remove painful hardware if pain persists and all conservative treatment options have been exhausted." *Id*. at 569. The ALJ did not discuss either of these records and Carlos's continued complaints of significant pain despite his second surgery and three rounds of physical therapy. The ALJ did note that later that same month, on January 28, 2017, Carlos "displayed pain in both feet" and "reported a normal activity level with no fatigue." *Id*. at 49, 592. But at the same time, the ALJ neglected to mention that during that session, Carlos was started on tramadol (a narcotic used to relieve moderate to moderately severe pain) and gabapentin (a nerve pain medication). *Id*. at 589, 592

The ALJ noted that during an April 2017 examination, Carlos was in no acute distress, his incision along the distal leg and left heel were well heeled, he did not display neurological abnormalities, and he displayed five out of five plantar flexion strength, but she did not explain why such findings were inconsistent with Carlos's account of his symptoms and limitations. (R. 49, 564). Although the ALJ noted that Carlos "displayed pain upon palpation to the left surgical site," she did not acknowledge that Carlos's reported pain symptoms had dramatically increased. Carlos stated that his pain level was an 8/10 pain with swelling to the back of his left heel and soreness and tightness to the area. *Id*. Dr. Maghrabi observed that Carlos was "frustrated with persistent pain to [the] left heel." *Id*. at 564. He also noted that Carlos "continues to have pain and

8

not be able to ambulate due to chronic Achilles tendonitis." *Id*. at 565. He casted Carlos for custom inserts with heel lift and indicated that another PRP injection to the left heel would be considered. *Id*. at 565.

Finally, the ALJ selectively discussed Dr. Maghrabi's August 2017 treatment note, the most recent medical record before the ALJ, to support her conclusion that Carlos's left foot had improved over time. Although the ALJ stated that Carlos reported ongoing pain to the posterior heel, especially with ambulation, and displayed pain during palpation of the left foot surgical site, she again neglected to mention that his daily pain level was 8/10 and he was only able to wear open back shoes because gym shoes were too painful. (R. 49, 560-61). The ALJ also failed to acknowledge that Dr. Maghrabi did "not recommend further surgery to the area at this time [d]ue to patient's continued pain that is not controlled with current medications." *Id*. at 561.

In addition to relying too heavily on temporary reports of limited improvement in Carlos's pain, the ALJ failed to consider the numerous attempts to control his pain symptoms with medications during the period after his second surgery. "Persistent attempts to obtain relief of symptoms, such as . . . changing medications . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017). The record reflects that Carlos has tried a number of oral and topical medications for pain management and other symptoms, none of which have brought long-lasting results. *See* (R. 573) (9/23/2016 – prescription for Diclofenac and Voltaren 1% gel); *id*. at 571 (11/11/2016 – prescription for Lidocaine ointment 5% and mometasone cream); *id*. at 568 (1/9/2017 – "States he used lidocaine topical jelly without any relief;" prescription for Medrol dose pak; "Will consider Lyrica or Gabapentin oral medication in the future if pain worsens."); *id*. at 566 (1/23/2107 - "Relates he took Medrol dose pak as instructed without any

9

relief" and prescription for Lyrica 75 mg BID); *id*. at 544, 547 (1/28/2017 – "he has not tried tramadol. Will start trial" and prescription for gabapentin 100 mg 3 times a day); *id*. at 564 (4/7/2017 – "Relates he has been taking Gabapentin with little relief" and "will consider another PRP injection to left heel."); *id*. at 562 (8/7/2017 – "Was previously taking gabapentin but stopped as it was not helping" and "recommended pain management consult."). As the ALJ noted, Carlos's doctors could not prescribe NSAIDS because he has only one kidney. (R. 48); *id*. at 569 (1/9/2017 – "Avoid NSAID use due to patient only having one kidney); *id*. at 547 (1/28/2017 – "He has CKD stage 3 and can only take certain meds."); *id*. at 563 (8/7/2017 - "Is unable to take many more pain medications b/c he only has one kidney."). Carlos's multiple medications were not controlling his pain, and it is unclear what evidence the ALJ relied on to support her conclusion that Carlos's pain improved over time with medication. Thus, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941. Before concluding that Carlos's pain improved over time with medication, the ALJ should have addressed why Carlos's doctors found it was appropriate to continue prescribing multiple medications. *See Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) (stating that "the fact that physicians willingly prescribed drugs ... indicated that they believed the claimant's symptoms were real").

In sum, the ALJ engaged in impermissible cherry-picking with regard to her evaluation of Carlos's medical record. The ALJ's finding that "the longitudinal record suggests that the claimant's pain improved over time with a combination of medication and physical therapy" is not supported by substantial evidence. (R. 49). Despite several courses of physical therapy and trials of multiple medications, Carlos nevertheless experienced ongoing significant pain and continued to search for successful pain management. The ALJ thus erred in concluding that a few short-lived periods of temporary improvement in Carlos's pain symptoms undermined his testimony.

On remand, the ALJ must evaluate Carlos's subjective symptom allegations in light of the record as a whole and support her evaluation of those allegations with substantial evidence in the record.

Second, in discounting Carlos's subjective complaints, the ALJ took issue with Carlos's claim that he needed to elevate his legs because "[t]he record does not evidence that the claimant needed to elevate his legs after mid-2015." (R. 50). In her decision, the ALJ noted that Carlos "stated that his foot swells and hurts when he puts pressure on it." *Id*. at 48. Carlos reported "constantly sitting down and elevating his foot." *Id*. The ALJ also noted that in April 2015, Dr. Joba, Carlos's treating podiatrist, indicated that Carlos needed to elevate his left foot and wear a boot. *Id*. at 50. As part of her RFC determination, the ALJ afforded "some weight" to this assessment but did not incorporate a leg elevation limitation into Carlos's RFC because Dr. Joba's opinion was "provided after [Carlos's first] surgery" and did "not reflect the claimant's functional abilities once fully recovered from surgery." *Id*.

Contrary to the ALJ's conclusion, there was evidence in the record that Carlos had to elevate his left foot after mid-2015. Carlos was advised by Dr. Joba on August 25, 2015 "to elevate the left as much as possible." *Id*. at 478. Moreover, the medical records post-dating Carlos's second surgery consistently document his problems with swelling and diagnosis of edema. *Id*. at 457 (4/28/2016 – edema diagnosis); *id*. at 455 (5/26/2016 – edema diagnosis); *id*. at 572-73 (9/23/2016 – "Relates he notices some swelling to the area" and edema diagnosis); *id*. at 570 (11/11/2016 – edema diagnosis); *id*. at 568-69 (1/9/2017 – "States he continues to notice swelling to the back of his left heel" and edema diagnosis); *id*. at 566-67 (1/23/2017 – "States he continues to notice swelling to the back of his left heel" and edema diagnosis); *id*. at 564-65 (4/7/2017 - "States he continues to notice swelling to the back of his left heel" and edema diagnosis); *id*. at 561 (8/7/2017 – edema diagnosis). Further, on November 11, 2016, Carlos was prescribed

11

mometasone cream, a corticosteroid that can address swelling or inflammation. *Id*. at 571. Carlos's testimony that he elevates his left foot to alleviate pain and swelling is consistent with this evidence.

"ALJs need not address every piece of evidence in the record, but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (internal citation omitted). In other words, the ALJ "'must confront the evidence that does not support her conclusion and explain why that evidence was rejected.' " *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)). The ALJ never mentioned Drs. Joba's and Maghrabi's edema diagnosis or demonstrated that she took that diagnosis into account. Nor did the ALJ acknowledge or discuss Carlos's continued reports of swelling. The ALJ's failure to analyze or even acknowledge this line of evidence was error. As a result, the Court cannot assess whether substantial evidence supports the ALJ's finding that Carlos does not need to elevate his left foot. *See Mills v. Colvin*, 959 F.Supp.2d 1079, 1095 (N.D. Ill. 2013) ("Because the ALJ did not consider the 'aggregate effect' of Plaintiff's symptoms, specifically Plaintiff's edema and because he rejected the entire line of evidence pertaining to Plaintiff's need to elevate his legs, this Court cannot determine whether substantial evidence support the ALJ's conclusion that Plaintiff can perform 'light work' and must remand the RFC determination."). This omitted evidence should be considered on remand. See *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ must "engage sufficiently" with the medical evidence contrary to her RFC finding);

Next, the ALJ discounted Carlos's symptoms because he "did not present to a pain clinic (per his provider's recommendation)." (R. 50). An ALJ cannot rely on a failure to follow prescribed treatment to discount a claimant's symptoms "without considering possible reasons he

12

or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9 (October 25, 2017); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although . . . the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."). An ALJ must "consider and address reasons for not pursuing treatment that are pertinent to an individual's case." SSR 16-3p, 2017 WL 5180304, at *10. An inability to afford treatment is one factor for the ALJ to consider. *Id.*; *see Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("An inability to afford treatment is one reason that can 'provide insight into the individual's credibility.'") (citations omitted).

Here, the ALJ did not discuss the reason why Carlos did not consult a pain management specialist. At the November 9, 2017 hearing, Carlos testified that he had been delayed in following through with the pain management referral because the doctor did not accept his insurance. (R. at 76). Other evidence in the record supports Carlos's assertion that his insurance did not cover certain treatment and providers. *Id.* at 547 (1/28/2017 - "He was recently prescribed Lyrica but [it] was not covered by insurance."); *id.* at 579 (9/15/2017 – "Pt states that his nephrologist is not covered by his insurance so he needs a new one."). The ALJ should have addressed Carlos's testimony about why he did not comply with the pain management consult referral before drawing a negative inference as to his pain symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *10 (ALJ "will explain how [she] considered the individual's reasons in [her] evaluation of the individual's symptoms.").

The ALJ's fourth reason for discounting Carlos's subjective symptom allegations is also deficient. The ALJ observed that Carlos "reported climbing fifteen stairs where he lives" as a reason to disregard his statements about his symptoms and limitations. (R. 50). While an ALJ may

13

rely upon a claimant's daily activities to discount his subjective symptom statements, that reason was improper because Carlos did not claim that he was unable to climb fifteen stairs. Carlos's testimony was not inconsistent with what he alleged. Instead, Carlos stated in his Adult Function Reports that he was "not able to come down stairs normally" or climb "more than two stories" and must "hold on" and "slow[ly] walk." *Id*. at 217, 238. Carlos similarly testified that he has to go "easy" on the stairs and must take each step "one by one." *Id*. at 81. In relying on Carlos's ability to climb the fifteen stairs in his home, the ALJ did not explain how this specific activity was inconsistent with any of Carlos's alleged limitations. The ALJ's mere recitation of an ability, without any explanation of why she believed such activity to be inconsistent with Carlos's alleged symptoms or limitations, fails to build the required accurate and logical bridge between the evidence and her conclusion. *Dowlen v. Colvin*, 658 F. App'x 807, 811 (7th Cir. 2016) ("ALJ did not explain how [claimant's] daily activities undermine the credibility of her complaints, and such conclusion is not self-evident."). Because the fact that Carlos can climb fifteen stairs one at a time is immaterial to the subjective symptom evaluation, it does not constitute a valid reason to discount Carlos's subjective statements.

Similarly, the ALJ faulted Carlos because he "did not present with a cane or assistive device at the hearing," but Carlos never reported needing a cane in either of her Adult Function Reports or at the hearing. (R. 50, 212). Although Carlos reported and testified that he uses an electric cart when he goes to the grocery store, Carlos did not state that he regularly uses any other assistive device to ambulate. *Id*. at 82, 212, 215, 239. The fact that Carlos did not use a cane or assistive device at the hearing where he did not claim to use one to ambulate except at a grocery store is not a persuasive basis to discount his subjective statements. Moreover, the ALJ failed explain how Carlos's failure to use a cane or other assistive device was inconsistent with his subjective

14

allegations. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). To the extent the ALJ inferred that Carlos's symptoms were not as severe as he claimed because he did not use a cane or other assistive device at the hearing, she impermissibly played doctor because "no expert offered evidence to that effect here." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Outour v. Saul*, 2020 WL 1663358, at *37 (D.S.D. Apr. 3, 2020) (ALJ "had no medical expertise and no medical expert of record opined, that in order to be entirely consistent with her pain complaints, [claimant's] medical conditions should require reliance on a cane."). Therefore, Carlos's failure to use a cane or other assistive device at the hearing does not provide a sufficient reason for discounting his symptom testimony.

Given these shortcomings, the ALJ's subjective symptom assessment is not supported by substantial evidence. The ALJ's errors regarding the subjective symptom finding and the related flaws with the RFC analysis were not harmless. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). Carlos's statements about the severity of his pain and his need to elevate his left leg were not so contradicted by the medical evidence as to be incredible on their face and the ALJ did not state that her decision to find Carlos not disabled did not depend on her subjective symptom evaluation.

The Commissioner points out that no doctor's opinion contained in the record indicated greater limitations than those found by the ALJ. While it is true that no medical source suggested that any greater limitation was required, it is also true that the ALJ's RFC determination was not supported by any medical opinion evidence. In fact, there are no medical opinions at all pertaining

15

to Carlos's functional capacity in the record. For this reason, the cases cited by the Commissioner are easily distinguished from this case. *See* Doc. 18 at 1, 7-8. In those cases, the records contained RFC assessments or opinions from state agency medical consultations, medical experts, or treating physicians. Here, the record contains no RFC determinations by the state agency physicians, no consultative examinations, and no medical opinions regarding Carlos's functional abilities.[1] In addition, Carlos testified that he is more limited than the ALJ's RFC finding, and his testimony cannot be discounted without a legally adequate analysis supported by substantial evidence. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (Commissioner noted that no doctor opined that claimant had more limitations than the ALJ incorporated into her RFC assessment but claimant "*testified* that she is more limited, and her testimony cannot be disregarded simply because it is not corroborated by objective medical evidence.") (emphasis in original). As described above, the ALJ has not provided sufficient justification for discounting Carlos's subjective symptoms.

If the ALJ had properly evaluated Carlos's subjective symptom statements, she could have found Carlos more limited which may have resulted in a more restrictive RFC. Moreover, the VE testified that if an individual needed to elevate his leg to waist height as needed throughout the day but for at least four hours during an eight-hour workday, all sedentary work would be precluded. (R. 89-90). Because the Court cannot be sure the ALJ would have reached the same conclusion about Carlos's subjective symptom statements absent the errors identified above, a remand is required. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("An error is harmless only if we are convinced that the ALJ would reach the same result on remand."); *Pierce*, 739 F.3d at 1051

---

[1] The state agency physicians concluded that Carlos failed to satisfy the 12-month durational requirement for disability and therefore, did not perform RFC assessments. (R. 96-98, 106-07). The ALJ did not rely upon the conclusions reached by the state agency physicians because "the record contains sufficient evidence to support severe physical and mental impairments" and "the consultants did not have the full record at the time they rendered their assessments." *Id.* at 50.

16

(a flawed subjective symptom evaluation was not harmless where the court could not "be sure that the ALJ would have reach the same conclusion about [the claimant's] credibility if the information he considered had been accurate."). On remand, the ALJ shall reassess Carlos's subjective statements and reevaluate her physical RFC determination after an accurate and complete consideration of the record. The ALJ must articulate sufficient reasons supported by substantial evidence if she discounts Carolos's subjective symptom statements regarding his pain, swelling, and need to often elevate his left leg. Under the circumstances of this case, where there are no RFC assessments in the record from any physician, the Court encourages the ALJ to obtain an opinion regarding Carlos's functional capacity from an appropriate medical source to provide an informed basis for determining whether Carlos is disabled.

For the sake of completeness, the Court notes two other aspects of the ALJ's decision which should also be addressed on remand. First, the ALJ failed to explicitly acknowledge that Carlos is obese or consider how Carlos's obesity combines with his other impairments to affect his functioning in the RFC assessment. (R. 92, 101) (5/2/2016 and 8/2/2016 – noting BMI is 36.8); *id*. at 545, 548, 578, 581 (11/15/2016, 1/28/2017, 9/1/2017, 9/15/2017- noting "Body mass index 30+ - obesity"). Under SSR 02-1p, "the ALJ must specifically address the effect of obesity on a claimant's limitations" and an ALJ's "fail[ure] to acknowledge this effect may impact the ALJ's credibility determination." *Villano*, 556 F.3d at 562; *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) ("An ALJ must factor in obesity when determining the aggregate impact on an applicant's impairments.").[2] On remand, the ALJ shall analyze what effect Carlos's obesity has on his left foot condition and his ability to perform sedentary work. *See Browning v. Colvin*, 766 F.3d 702,

---

[2] On May 20, 2019, the SSA rescinded SSR 02-1p and replaced it with SSR 19-2p. *See* SSR 19-2p, 2017 WL 2374222, at *1 (May 20, 2019). However, SSR 02-1p was the applicable rule at the time the ALJ issued her decision in January 2018. *Mitchel A. v. Saul*, 2020 WL 2324425, at *10 n.6 (N.D. Ill. May 11, 2020).

17

707 (7th Cir. 2014) (recognizing that obesity "might make it difficult [for a claimant] to sit for long periods of time, as sedentary work normally requires."). If the ALJ thinks Carlos's obesity does not result in limitations on his ability to work, she shall explain how she reaches that conclusion. *Arnett*, 676 F.3d at 593; SSR 19-2p, 2019 WL 2374244, at *4 ("We must consider the limiting effects of obesity when assessing a person's RFC" and "we will explain how we reached our conclusion on whether obesity causes any limitations.").

Second, the ALJ should also ensure that the mental RFC and accompanying hypothetical to the VE accurately account for Carlos's moderate limitations in concentration, persistence, and pace. "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). In this case, the ALJ found that Carlos had moderate limitations with regard to concentrating, persisting, or maintaining pace. (R. 46). The ALJ noted that Carlos "reported difficulty maintaining concentration due to pain." *Id*; *see also id*. at 86, 237-38, 608, 610. The ALJ found that Carlos's "ability to perform varied activities such as shopping, household chores, and personal care tasks suggests that he can maintain concentration for periods of time." *Id*. at 47. The ALJ's RFC and hypothetical to the VE limited Carlos to performing "simple and routine instructions and tasks." *Id*. at 47, 89.

A limitation to "simple, routine, and repetitive tasks" is a reference to "unskilled work," which the regulations define as work that can be learned in than 30 days. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017); *Varga*, 794 F.3d at 814. However, limiting a claimant to unskilled work or simple, routine or repetitive tasks is not sufficient to account for difficulties in concentration, persistence, or pace because "[t]he ability to stick with a task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*

*v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010); *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) (a claimant's "ability to learn routine, unskilled tasks does not address whether she can also maintain the concentration and focus needed to sustain her performance of that task for an extended period."); *Varga*, 794 F.3d at 814 ("whether work can be learned" by demonstration in less than 30 days "is unrelated to the question of whether an individual . . . with difficulties maintaining concentration, persistence, or pace . . . can perform such work).

Therefore, the Seventh Circuit has "'repeatedly rejected the notion' that a hypothetical confining the claimant to simple, routine tasks adequately captures limitations in concentration, persistence, and pace." *Radosevich v. Berryhill*, 759 F. App'x 492, 494 (7th Cir. 2019); *see also Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) (agreeing with plaintiff's argument that the ALJ's limitation that plaintiff perform only "simple, routine, repetitive tasks with few workplace changes" failed to address claimant's moderate difficulties with concentration, persistence, and pace); *Mischler v. Berryhill*, 766 F. App'x 369, 376 (7th Cir. 2019) ("... 'simple routine and repetitive tasks' in a low stress job ... fails to account for the 'moderate' difficulties in concentration, persistence, and pace ... which the ALJ expressly adopted."); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (limiting an individual to understanding, remembering, and carrying out simple work instructions, exercising simple work place judgments, doing routine work, and having no more than occasional changes in the work setting "clearly did not account explicitly for [the claimant's] moderate limitations in concentration, persistence, and pace."); *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the claimant's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not

19

require constant interactions with coworkers or the general public"); *Craft v. Astrue*, 539 F.3d at 677-78.

Here, it is unclear whether the RFC and hypothetical to the VE accounted for Carlos's moderate limitations in concentration, persistence and pace resulting from his pain. *Winsted v. Berryhill*, 915 F.3d at 477 ("Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitations was properly incorporated in the RFC and in the hypothetical question."). On remand, the ALJ should explain how a limitation to only simple and routine instructions and tasks adequately accounts for Carlos's moderate limitations in concentration, persistence, and pace.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment or for Remand [9] is granted in part and the Commissioner's Motion for Summary Judgment [17] is denied. The ALJ's decision is reversed and remanded for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff Carlos J. and against the Commissioner.

**SO ORDERED.**

Dated: August 19, 2020

_____
Sunil R. Harjani
United States Magistrate Judge